# In the United States Court of Federal Claims

Case No. 12-10C
(Re-filed:  February 10, 2012, PUBLIC VERSION)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| ARGUS & BLACK, INC., | * |
| *Plaintiff,* | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES OF AMERICA, | * |
| *Defendant.* | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Alain Jeff Ifrah**, Washington, D. C., attorney of record for the plaintiff.

**Alexis Echols**, U.S. Department of Justice, Washington, D.C., attorney of record for the defendant.  With her on the briefs were **Tony West**, Assistant Attorney General; **Jeanne E. Davidson**, Director, Commercial Litigation Division; and **Donald E. Kinner**, Assistant Director.  **Robert B. Neill,** U.S. Department of the Army, Washington D.C., Of-Counsel.

**John Bergen**, Law Clerk.

## OPINION

BASKIR, Judge.

This matter arises out of a procurement by the United States Army Mission and Installation Contracting Command ("MICC") to provide certain specialized military training for deploying troops.  Plaintiff, Argus & Black, Inc. ("ABI"), a small business enterprise founded in 2005 by former members of the special operations community, submitted a bid in response to the Request for Quotations ("RFQ") but was not awarded the contract.  Plaintiff subsequently filed a bid protest with the Court and moved for a preliminary injunction under Rule 65 of the Rules of the United States Court of Federal Claims ("RCFC") in order to prevent the defendant from commencing performance of the contract pending the outcome of the protest.  **For the reasons stated on the record during the hearing on plaintiff's motion, as well as the findings in the Opinion below, the plaintiff's motion for preliminary injunction is DENIED.**

I.   **BACKGROUND**

The contracting office for the Army's MICC issued RFQ No. W9124E-11-T-0061 for firm-fixed-price quotations from service-disabled veteran-owned small businesses to provide training in support of various security force assistance activities.  In particular, MICC seeks contractors to provide instructor support for stability operations/ counterinsurgency, cultural awareness, and personnel recovery at the Army's Joint Readiness Training Center ("JRTC") in Fort Polk, LA.  The contract term is one year. The RFQ was issued pursuant to the simplified acquisition procedures of Federal Acquisition Regulation ("FAR") Parts 12 and 13.  The procuring agency evaluated offerors on three criteria: (1) price; (2) technical; and (3) past performance.  *See* RFQ at 9 (incorporating FAR § 52.212-2, Evaluation – Commercial Items).  Technical competence and past performance combined were considered less important than price.  *Id.*  Pursuant to the RFQ, the government intended to award the contract "based on the Lowest Price Technically Acceptable Offer without discussions."  *Id.*

Prior to submission of bids, the contracting officer provided an opportunity to clarify elements of the RFQ.  These same clarifications followed a written question and answer format which was subsequently incorporated as an amendment to the RFQ. Among the subjects covered by the amendment was the following clarification to the contract line item ("CLIN") covering reimbursable travel expenses:

> **Question:**  Clarification on CLIN #3.  "Travel reimbursed for actual costs incurred only at the NOT–TO–EXCEED estimated amount of $200,000 per year."  Is this $200,000 meant to be a 'plug' number for all vendors to use for CLIN 0003?

> **Answer:**  Yes.

RFQ Amendment 001.  The government recognized that actual costs for travel would prove far too speculative to include in an up-front price quote and in any event would be reimbursed on a uniform basis under the Joint Travel Regulation ("JTR"), applicable to all military services.  In short, CLIN 0003 was not considered a firm-fixed-price.  From what we can gather in reviewing the materials accompanying the briefs, the government applied the $200,000 evenly across the board as a baseline assumption representing the reimbursable cost associated with the bids.

The Army received bids from five offerors, including the bid submitted by the plaintiff, ABI, through its subcontractor fleet of experienced instructors at Torres Advanced Enterprise Solutions, LLC ("Torres.").  The technical background and past performance history of the offerors are not pertinent to this bid protest.  What is relevant to our discussion are the offerors' bids, which were  summarized by the agency as follows.

| | |
|---|---|
| Yorktown Systems Group ("Yorktown") | $1,754,980.15 |
| ABI-Torres | $1,760,075 |
| Manzano | $1,898,952 |

| | |
|---|---|
| J2TAC LLC | $1,999,325.47 |
| Coastal Defense, Inc. ("CDI") | $2,069,758.46 |

Evaluation for Award Memorandum (Sept. 19, 2011); Defendant's Appendix ("Def. App.") 214.  The summary reflects the firm prices for each line item listed in the RFQ which could be determined in advance, as supplemented by the "plug-in" value of $200,000 representing the cap on reimbursable travel expenses.

On September 22, 2011, MICC awarded the contract to Yorktown based on its lowest price.  As the evaluation memorandum illustrates, ABI submitted the next most competitive price quote, separated by about $5,000.  Plaintiff filed a bid protest in this Court on January 5, 2012.  This followed two prior unsuccessful protests with the U.S. Small Business Administration ("SBA") and the U.S. Government Accountability Office ("GAO") in September 2011, alleging other defects.

Despite having challenged MICC's award on several grounds related to both price and technical merit in the earlier protests, in the present case, ABI alleges that the agency erroneously determined that Yorktown's bid was less expensive than that of ABI.  According to the plaintiff, the Army should not have accepted Yorktown's purportedly less expensive price quote at face value in light of the fact that Yorktown's pricing chart included a footnote indicating that the company would add a five percent administrative cost to reimbursable travel expenses.  The plaintiff alleges that this caveat in the RFQ response increases Yorktown's actual price above the stated bid.  In the alternative, ABI argues that the mere mention of the administrative costs as part of a bid in which each offeror was instructed to use a uniform "plug-in" figure renders its competitor's bid unresponsive, thus obligating the government to either reject it entirely or clarify the ambiguity on the record.

Pending the outcome of the SBA and GAO protests – decided against ABI on November 2, 2011 and January 3, 2012, respectively -- MICC was compelled to issue a stop work order to Yorktown and extend an existing contract with incumbent contractor, CDI, providing similar services.  Declaration of Ronald R. Applewhite, Contracting Officer ("Appllewhite Decl.") at ¶¶ 3-4.  According to the contracting officer, these contract extensions, now totaling four months, are on a month-to-month basis, and cost the agency approximately $62,000 per month over Yorktown's contract price.  *Id.* at ¶¶ 4 and 9.  Although the most recent extension provides for instructors at Fort Polk through the remainder of this month, MICC lifted the stop work order once the GAO protest was dismissed and made arrangements for Yorktown to begin performance on January 24, 2012, in anticipation of a surge in mission requirements over the next few months.  *Id.* at ¶ 5.

The Court held an initial status conference for this case on January 11, 2012, during which the parties proposed a schedule beginning with the filing of the Army's administrative record on January 20, 2012, with responsive briefing on cross-motions for judgment on the administrative record extending through February 14, 2012.  The defendant is unwilling to suspend performance of the contract or enter into a bridge contract with the incumbent pending full briefing on the administrative record, pursuant

to RCFC 52.1.  Consequently, ABI seeks immediate injunctive relief in order to prevent Yorktown from beginning to perform the contract until the merits of the bid protest have been adjudicated.

## II.   DISCUSSION

### A.   Standard for Obtaining Injunctive Relief

Preliminary injunctions are a form of extraordinary relief appropriate only in the rare circumstance in which the Court's immediate intervention is required to prevent irreparable injury during the pendency of a lawsuit.  In order for the Court to issue a preliminary injunction in advance of adjudicating the merits, pursuant to RCFC 65(a), the plaintiff is required to establish the following factors by clear and convincing evidence:

- •   first, that ABI can demonstrate that it is likely to succeed on the merits;
- •   second, that ABI will suffer irreparable harm in the absence of injunctive relief;
- •   third, that the balance of hardships – upon ABI, on the one side, and upon the Army as well as the successful offeror, Yorktown, on the other side – weighs in favor of granting the preliminary injunction; and
- •   finally, that granting the injunction is in the public interest.

*See Am. Signature, Inc. v. United States*, 598 F.3d 816, 823 (Fed. Cir. 2010) (quoting *Winter v. NRDC*, 129 S. Ct. 365, 374 (2008)).  The four competing elements are simultaneously weighed.  "No one factor, taken individually, is necessarily dispositive," as the movant's failure to demonstrate any one of these elements may be sufficient to justify denying the motion.  *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citing *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 952 (Fed. Cir. 1990)).  Conversely, the weakness of the movant's case "regarding one factor may be overborne by the strength of the others."  *Id.; Standard Havens Prods., Inc. v. Gencor Indus.*, 897 F.2d 511, 513 (Fed. Cir. 1990).  Notwithstanding this sliding scale approach, it is well established that the first two elements of the test for injunctive relief are critical if the injunction is to issue.  *See NetStar–1 Gov't Consulting, Inc. v. United States*, 98 Fed. Cl. 729, 731 (2011) (quoting *Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009)); *see also Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("Our case law and logic both require that a movant cannot be granted a preliminary injunction unless it establishes *both* ... likelihood of success on the merits and irreparable harm.")  If the party requesting an injunction "cannot demonstrate that he is likely to succeed in his quest, the remaining factors become a matter of idle curiosity."  *Wine and Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 46 (1st Cir. 2005) (quoted by *Abbott Laboratories v. Sandoz, Inc.*, 544 F.3d 1341, 1365 (Fed. Cir. 2008)).  Accordingly, we begin with an analysis of ABI's substantive claim.

**B.      Application of Preliminary Injunction Factors**

*(i.)      Likelihood of Success on the Merits:*

        The first of the four injunction factors falls decidedly in favor of the government. Applying the familiar standards for reviewing procurement decisions under the Tucker Act, we find on the record currently before us that the agency's choice of proposals is entirely rational and consistent with both the FAR and the terms of the RFQ.  *See* 28 U.S.C. § 1491(b)(4) ("In any action under this section, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5 [Administrative Procedures Act.]");  *Banknote Corp. of Am. v. United States*, 365  F.3d 1345, 1350 (Fed. Cir. 2004) (applying 5 U.S.C. § 706(2)(A), "a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'")  Unless the administrative record ultimately filed in this case contains clear and convincing evidence supporting plaintiff's interpretation of Yorktown's RFQ response – beyond what has been shown by the exhibits submitted for this proceeding – the Army's award to Yorktown will be upheld on the same basis relied upon by the GAO in denying ABI's protest.  *In re Argus & Black, Inc.*, B-405813, Jan. 3, 2012.

        Plaintiff's interpretation of Yorktown's bid relies solely upon a strained reading of its summary of line item costs.  In the summary, Yorktown provides a chart containing CLIN 0001 through CLIN 0005.  *See* Yorktown's Response to RFQ at 5; Def. App. 99. For CLIN 0001, Yorktown quoted a price of $31,997.75 for a one-week phase-in period of performance.  For CLIN 0002, Yorktown quoted $1,522,982.40 for the various subject matter instructors provided under the 12-month contract.  In contrast to these firm fixed prices, CLIN 0004 and CLIN 0005 cover unique unforeseen training requirements and manpower reporting and contain no prices.  Finally, CLIN 0003 reflects "mobile training team travel costs."  Pursuant to the amended RFQ, these travel costs reflect the plug-in value of $200,000.

        Immediately underneath the above referenced chart, Yorktown includes a list of 15 footnote-style "Notes/ Assumptions."  Note four reads:

        In performance of the contract, the travel will be invoiced on a cost
        reimbursable basis; IAW the JTR, cost will be burdened with an
        Administrative cost of 5% by Yorktown Systems Group.

*Id*.  ABI assumes that the five percent adjustment would be over and above the established cap on travel expenses.  On this basis, Yorktown's actual costs associated with CLIN 0003 are $210,000, not $200,000, making its total price of performance approximately $5,000 more expensive than ABI's proposal.

        This argument is bolstered by sheer conjecture alone.  First, it is impossible to predict whether the travel over the next year will even amount to $200,000.  It is for that very reason the plug-in value was used.  More importantly, nowhere in the materials we have reviewed does Yorktown evidence an unwillingness or inability to abide by the

RFQ's "not-to-exceed" value of $200,000 for travel expenses.  Nor does Yorktown propose charging an amount over and above what is allowed under the governing regulations.  To the contrary, the language appears to simply acknowledge that any travel expenditures and associated administrative charges will be handled on a cost-reimbursable basis, in accordance with the JTR, and will not exceed a $200,000 threshold.  The quoted passage confirms Yorktown's understanding that the line item employed a plug-in value to be applied to each bid.  In the absence of any evidence that Yorktown's quote violated applicable travel regulations, we find that the contracting officer was not required to reject or clarify Yorktown's proposal.

During oral argument on this motion, counsel for plaintiff shifted his focus to the character as opposed to the quantum of the five percent cost.  He reasoned that even if the administrative cost did not exceed $200,000, the contracting officer should have questioned the submission based on the possibility that the government was not paying for $200,000 worth of travel, but instead was paying for some amount of travel and then some additional percentage represented by an unidentified administrative cost.  Oral Argument, 10:20.  A submission "that fails to conform to the material terms and conditions of the [RFQ] should be considered unacceptable" and any award made under such conditions would violate procurement statutes and regulations.  *E.W. Bliss Co. V. United States*, 77 F.3d 445, 448 (Fed. Cir. 1996).  We do not find that to be the case here.

The plaintiff's argument fundamentally misconstrues the unique nature of CLIN 0003.  As the Comptroller General has already determined, "the RFQ did not request the quotation of a fixed price for CLIN 0003."  *In re Argus & Black, Inc.*, B-405813, Jan. 3, 2012 at 3.

In sum, the plaintiff's protest fares no better in this Court than it did before the GAO.  ABI cannot demonstrate a reasonable likelihood of success on the merits of its bid protest.

(ii.)   <u>Irreparable Harm:</u>

The plaintiff likewise cannot establish the type of irreparable injury a preliminary injunction is intended to prevent.  ABI has "an adequate remedy in the absence of [a preliminary] injunction."  *Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993).  In its initial motion for an emergency temporary restraining order ("TRO"), plaintiff cited the "lost opportunity to compete" for the MICC contract.  Plaintiff's Motion for TRO at 7.  "Once the contract performance period begins," plaintiff contends, "ABI will no longer be able to be awarded the contract and that would directly cause ABI to be unfairly shut out from a proper evaluation of its proposal."  *Id.* at 7-8.

For purposes of the preliminary injunction, we focus our attention on whether the ABI will suffer irreparable injury in the event the contract award is not enjoined prior to the commencement of performance by the awardee on January 24, 2012.  Recognizing that the lost opportunity to compete may constitute irreparable harm, we do not accept ABI's premise that it will be unfairly "shut out" of consideration for this contract once

January 24 arrives.  Assuming the court stays its hand and denies the plaintiff's motion for an immediate injunction, there is no legal obstacle preventing ABI from pursuing this litigation.  The Court will proceed promptly toward a resolution of cross-motions for judgment on the administrative record and decide whether a permanent injunction is appropriate.  Indeed, the parties have represented that briefing will be completed by February 14, 2012, not even one month into the 12-month contract.  While it appears unlikely at this point that a permanent injunction will issue given our interim findings respecting the merits of plaintiff's case, should ABI ultimately prevail in its protest the Court would show absolutely no reluctance in nullifying the award decision and requiring the government to reevaluate the bids, thus providing the plaintiff an even playing field and a continuing opportunity to compete.

The plaintiff is apprehensive that any corrective action after performance has begun will be inevitably tainted because "the contracting officer will have increased familiarity with Yorktown over ABI, and will be able to factor that knowledge into [his] evaluation."  Plaintiff's Reply Brief ("Pl. Reply") at 5.  In addition, ABI argues that it will be at competitive disadvantage during the reevaluation once transition costs are factored in to the decision to change the awardee.  *Id.*  These classic *fait accompli* arguments often carry significant weight when establishing prejudice in the post-award context.  However, they are misplaced here.  As we interpret the state of affairs in this procurement, were the plaintiff to succeed in its arguments, any reevaluation would be necessarily limited in scope to the firm-fixed-prices of the respective offerors.

Under the circumstances, therefore, the plaintiff is in no better nor worse shape, regardless of the result of this motion.  Accordingly, we conclude that ABI has not demonstrated that it will suffer irreparable harm in the event the injunction is denied.

*(iii.)*   <u>Balance of Hardships</u>:

In applying the third factor for obtaining injunctive relief, we balance the harm the movant would suffer without the injunction against the harm the defendant would suffer as a result of the injunction.  *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 715-16 (2006).  Based on our findings, it is difficult to conceive how the balance of equities will favor ABI.  By the same token, we found the  hardships detailed by the defendant to be rather routine fiscal issues.

Staying performance of this contract for the relatively brief period necessary to conclude this litigation would not jeopardize the procurement or unduly impact the Army's mission, especially considering the fact that instructors are on the ground at JRTC in Fort Polk as of this writing doing the very same type of training called for under the new contract.  Moreover, these instructors are furnished under a pre-existing contract, which has been extended several times by the procuring agency.

It will likely be more expensive for the government to continue its relationship under the pre-existing contract.  Indeed, the incumbent CDI submitted what was far and away the most expensive of the five bids received for the new contract.  While there is no evidence that the government has attempted to negotiate a lower price with the

incumbent for a bridge contract, the Army will no doubt be compelled to pay a premium if a short-term bridge contract is entered into between MICC and CDI.  As things stand now, the Army is paying $208,000 per month under the contract extension with CDI, whereas immediate performance with the awardee, Yorktown, would cost only $146,000 per month.  *See* Applewhite Decl. at ¶¶ 9-10.  Nonetheless, the government would concede that a bridge contract is a fairly routine approach to mitigate against the uncertainties imposed by this type of case.  Furthermore, while dealing with an incumbent may entail  additional expenses, the potential alternative of reversing course on a contract once performance has begun and reevaluating bids in response to a court order would prove expensive, as well.

In addition to the increased cost of extending the incumbent, Mr. Applewhite asserts that a bridge contract would displace Yorktown beyond the period required for the Court to receive the administrative record and decide the protest.  According to the CO, "[i]f an extension is ordered, the extension would need to be for no fewer than 60 days to accommodate uninterrupted critical training for approximately 1,250 soldiers for the mission surge during the February and March timeframe."  *Id.* at ¶ 8.

Even considering the anticipated "surge," and the fact that a bridge contract might entail more than a mere month of delay in contract performance by Yorktown – or, as the case may be, with ABI – on the whole, the balance of equities is very even.  Accordingly, this factor necessarily does not overcome the plaintiff's inadequate showing with respect to the first two factors.

### (iv.)  *Public Interest*:

Our final consideration centers on whether granting the requested relief is in the public interest.  The parties have argued along familiar lines – the protester champions the need for fairness in the public procurement process while the government touts the importance of securing the most competitive provider of goods and services on behalf of the taxpayer.

Protecting the public fisc, especially in the present economic climate, is indeed in the public's interest.  The defendant has demonstrated that if the injunction is granted, the government will continue to bear a higher than expected cost for the military training at issue.  However, cost savings cannot come at the expense of established procurement procedures, which provide for open and fair competition.  It is undeniably in the public's interest to uphold the integrity of the governmental procurement process and to increase competition to greatest extent feasible.  *SAI Indus. Corp. v. United States*, 60 Fed. Cl. 731, 747 (2004).

With that said, however, we do not believe that the integrity or fairness of this procurement has been seriously called into question by the protestor's allegations.  Nor do we find any evidence that competition has been restricted under the facts of this case.  Both the findings of the GAO and our own consideration of the error raised by ABI confirm that the Army has fully complied with applicable law and regulations in evaluating the offerors' price quotes for each contract line item contained in the RFQ.

III.     **CONCLUSION**

After a detailed review of the papers and analysis of the legal standards governing the issuance of injunctive relief, pursuant to RCFC 65(a), the Court concludes that the plaintiff has not made an adequate showing.  **The plaintiff's motion is hereby DENIED.  The plaintiff shall inform the Court and the defendant no later than Wednesday, January 25, 2012, whether it will pursue its protest notwithstanding the denial of injunctive relief.**

**The parties are hereby ORDERED to inform the Court in writing no later than 12:00 pm eastern standard time on Wednesday, January 25, which portions of the Opinion must be redacted, giving reasons grounded in fact.**

**IT IS SO ORDERED.**

 s/ Lawrence M. Baskir 
LAWRENCE M. BASKIR
Judge